Case number 21-1711, Ralph Cottenham v. Noah Nagy, Warden. Order of argument not to exceed 15 minutes per side. Ms. Salinas. Thank you. Good morning, may it please the court. I'm the supervising attorney from the University of Michigan Law School, and I have the honor of introducing Ms. Rhea Basha, who will present the case. Thank you. Thank you. May it please the court, my name is Rhea Basha on behalf of Mr. Ralph Cottenham, and I'd like to reserve three minutes for rebuttal. Very well. The state trial court violated Mr. Cottenham's Sixth Amendment rights to present a complete defense and to effectively cross-examine his accuser. That court did so when it prevented Mr. Cottenham from impeaching the state's star witness against him, Mr. Cody Sweet. Mr. Cottenham wanted to both call new witnesses to undermine Mr. Sweet's reliability, as well as thoroughly test Mr. Sweet on these topics of motive, bias, and prejudice that the Sixth Amendment protects. The state trial court stood in the way. When Mr. Cottenham attempted to raise these federal constitutional violations in the Michigan appellate courts, those courts misconstrued the claim as one that only implicated state evidentiary law. They never touched the merits of the constitutional claim. This court then is the last remaining forum for Mr. Cottenham to vindicate his federal constitutional rights. We therefore ask this court to look at the claim de novo and ultimately reverse the district court's decision. I'll start first with the standard of review and then move to the merits of the claim. Because no court has ever adjudicated this claim on its merits and Mr. Cottenham did not procedurally default the claim, this court should apply de novo review. Mr. Cottenham fairly presented his claim on direct appeal as a federal constitutional claim. He alerted the state court to the federal nature of the claim in a variety of ways. First, he invoked the federal constitution. He cited to the Sixth Amendment the compulsory process clause, his right to present a defense, and the confrontation clause. He then invoked the seminal Supreme Court cases that one would when raising a Sixth Amendment violation. And those are cases like Chambers v. Mississippi, Crane v. Kentucky, and Washington v. Texas. And then he even cited to state cases that employed a federal constitutional analysis to apply those cases to the facts of his case at hand. So it was clear then that he was raising a federal constitutional violation. The state courts, however, misconstrued that claim and completely recast it as a state evidentiary issue. Now, ordinarily, Johnson v. Williams and Harrington v. Richter give us that a state court resolution of a claim on state law grounds might count as an adjudication on the merits. But Mr. Cottenham can rebut that presumption in at least three ways, although he only needs one. And these rebuttals all come from Johnson v. Williams. Mr. Cottenham first can show under Johnson that the standard of resolving the state law issue that the state court recast this claim into was less protective than the federal constitutional claim that he was actually raising. There, the state court completely resolved the claim on an abuse of discretion standard, whereas the federal constitutional violation that Mr. Cottenham was raising needed to be resolved and shown harmless beyond a reasonable doubt on direct appeal in the state courts. This is very similar to a case that this court just decided, this term in McLilley v. Nagy. What was the name of the case? McLilley v. Nagy. And that was just decided in January of this year, where Judge Kethledge analyzed a claim very similar to this one, where a federal habeas petitioner raised a constitutional violation and the state court there was the Ohio State Courts, recast that claim as a state evidentiary issue. And in comparing the abuse of discretion standard to the harmless beyond a reasonable doubt standard that the federal claim required, this court then found that that claim was not adjudicated on its merits and proceeded to a de novo review. So this case is actually on all fours with McLilley in that way. The state court standard does not subsume the federal standard and therefore doesn't count as an adjudication on the merits. So let's move on. Let's assume it is de novo review. What is your argument, your best argument as far as the, what are you raising, confrontation and complete defense? Yes, Your Honor, it's both. Okay, and what is your argument on de novo review? On de novo review, it's that the state trial court violated both of those constitutional rights that Mr. Cottenham was invoking, the right to present it. But where in the record does the court limit, putting aside the two witnesses, where does the court limit the cross-examination of Sweet? Yes, Your Honor, it doesn't happen in just one place, but I would point this court to pages 360 to 363. Three hundred what? 360 to 363 of the record, where there's a conversation between trial counsel and the trial court judge about the examination of Mr. Sweet and about exposing Mr. Sweet's motives to testify. Is this the part that begins when the court says, Mr. Frye, I understand you have two witnesses you intend to produce. That's page, the small page 112, but it's on page ID 360. Yeah, that's correct. There's other things that happen earlier in the page. Is that where it starts? That's correct. But isn't that the whole discussion about these witnesses? Sweet isn't there. They're not trying to cross-examine him. He's already finished, hasn't he? Well, he's actually still capped on a continuing subpoena. I understand that. But if they're going to cross-examine him any further, at least wouldn't they say, Your Honor, we want to recall him in order to do such and such and continue cross or say something. But isn't the whole discussion is about these two witnesses? So specify where they limited the cross-examination of Mr. Sweet as opposed to the complete defense. Yes, Your Honor. I would point you, Judge Boggs, to page 360 to 361, where counsel references an earlier conversation that happens off the record in chambers about allowing in this extra testimony and the subjects that counsel can test Mr. Sweet's reliability on. So there are at least two distinct points in the trial, and unfortunately that conversation is not on the record. But we see here that the court has already stood in the way of It seems like there were, I mean, you can't tell exactly, but he's saying with regard to certain evidence, what I believe should be allowed in. If you're talking about cross-examination, that's not the way you would talk about it. Yes, he's attacking Sweet or he wants to attack Sweet, but I couldn't find a single word that talked about how they wanted to do it by talking to Sweet as opposed to bringing in these witnesses. Well, you're right, Your Honor, that there's no verbatim. Okay, well, why don't you tell us about the two witnesses, because that's, I think, your at least potentially stronger argument. Sure. Well, Mr. Cottenham's right to present a defense was violated by the limitation of these additional witnesses, but I also want to point out that this court has recognized, as well as the Supreme Court in Washington v. Texas, that the right to present a defense and the right to confront are inextricably linked in the bedrock of the Sixth Amendment, and that's from Washington v. Texas. So in that way, the limitation on the calling of additional witnesses cascaded into a limitation on the cross-examination of Mr. Sweet. So to the extent that counsel wanted to recall Mr. Sweet and test him on the subject of motive, bias, and prejudice, the trial court's limitations, whether it be on those additional witnesses or the testing of Mr. Sweet. I'm sorry. Let's talk about the relevance to those. Motive was jealousy that counsel was addressing. That was jealousy of Amber's relationship with his father. Why did you need extrinsic evidence to get into that? I mean, the situation was right there, and in fact I think counsel argued that, right? Cain and Abel and all of that. Why did you need this other evidence to establish that particular motive? Yes, Your Honor. Well, I think that question comes into relief when we understand and emphasize just how important Cody Sweet was at trial. He was the state's most important witness. He was the one that provided a chronological narrative of Mr. Cottenham's involvement in the offense. He was the one who pinned Mr. Cottenham to the scene of the crime, and no other witness could have offered that narrative or that evidence. So Mr. Cottenham's interest then in undermining Mr. Sweet thoroughly and completely was incredibly high. So to the extent that he needed extrinsic evidence to completely flesh out Mr. Sweet's motive to testify against Mr. Cottenham, whether it be because he was jealous of the victim or whether it be because he resented Mr. Cottenham for his previous actions, or to the extent that, and this comes out in that conversation from 360 to 363, that he had pending criminal charges that would have motivated him to seek complete immunity. All of these are the specific kind of motive that would have given the jury something to hold on to. There were charges pending with regard to these two witnesses that they wanted to bring? Or is that something different? One of them. To Cody Sweet, correct. To Cody Sweet for what he had done or allegedly done to one of the witnesses. Yes, Your Honor. Okay, and counsel argues about that, that, well, that there's a motive to get rid of her once he hit her the first time. Did counsel... Do you have any idea what happened in that first colloquy that's off the record? I mean, did you speak to trial counsel? No, Your Honor, I didn't. This analysis comes directly from the record, and what we know about that previous colloquy is that, and this is quote from page 360, the court's preliminary ruling, which was not on the record, it's, I'll only be calling two witnesses, quote, it's not going to allow that testimony. Your time's about out, but let me ask you kind of at gut bottom here, in your brief says things like, pretty close, that you're always entitled to bring in criminal past of a witness, and that wasn't the way I understood the law. As a federal matter, federal constitutional matter, what would you point to that says, we can bring in a person's bad past, not as moral turpitude or perjury, but that would give the jury something to know about, that this witness is a criminal. But are there federal cases you can point to that say you can generally do that? And if I just may answer the question. Yes. This again comes down to the protected zone of inquiry, and that's from this court's decision in Boggs v. Collins, about a witness's motive to testify. Not necessarily a motive to commit an offense, or not a motive to commit other acts outside of the context of the testimony. And he'd certainly been cross examined about his whole plea deal. I mean, the jurors knew that this guy was, you know, all kinds of criminal penalties at least as an accessory after the fact, and he was going to walk on that. So, you know, even from that point of view, but, you know, you're citing to general cases. Are there cases that you would point to that say, you know, you can simply show that a person was a bad person because of his criminal past? No, Your Honor. The brief comes close to saying that. Well, I'll walk that back a little bit and just emphasize again that this is about exposing Mr. Sweet's motive to testify. And whether that is because, and it's not necessarily because he committed a crime, but because he was so motivated to seek a complete immunity deal here because of his pending charges that would have motivated him to get up on the stand and pin Mr. Cottenham. And I'll finish with this, but this actually just gets to Judge Bush's opinion in Miller v. Genovese, which is that we look at the harmfulness of the exclusion of evidence in a Sixth Amendment context with this kind of general view, with a holistic inquiry, as to the importance of the evidence that was excluded against what the State's case was at trial. And this was a case that lacked any physical evidence that Mr. Sweet provided missing links, critical missing links, to describe Mr. Cottenham's involvement in the offense. And so trial counsel's need to undermine his reliability was of the utmost importance. Was the pending charge part of the deal? That's not clear from the record, but it certainly might have been something that motivated him. They could have asked him that. I mean, on cross-examination, could they not? Obviously, you're getting a deal. I can't imagine that they wouldn't have allowed him to say, are there any other aspects of the deal you haven't talked about? Well, I would venture to say that Mr. Sweet likely wouldn't have disclosed his pending criminal charges then. That he what? I'm sorry. That he wouldn't have disclosed his pending criminal charges. But defense counsel knew about them. Although my understanding was it was a different county, right? Yes, that's right. So technically, one prosecutor couldn't have given him a deal on the other. But again, that's the sort of thing you could have asked on cross-examination in order to plant in the mind of the jury. Okay, thank you. Okay, thank you, Ms. Basha. You have your rebuttal time. Good morning. May it please the Court. Assistant Attorney General Eric Jenkins on behalf of the respondent appellee in this matter. I actually want to start with answering two questions the Court just posed to counsel. First, with regard to the plea deal in this case, I think there's a little bit of a misconception here. This was not a plea deal for Mr. Sweet. It was an immunity agreement, but it was use immunity, saying that any of his testimony could not be used against him except in a perjury charge if he perjured himself. Another question that came up was about whether or not he was allowed to explore on whether or not trial counsel was allowed to explore on cross-examination this idea of the plea deal and his motives for testifying and things like that. I think it's important to note that during cross-examination, trial counsel actually brought out in front of the jury that Mr. Sweet had perjured himself previously. He had said something different in the preliminary examination than he was saying in the Well, you say perjured himself. There wasn't a criminal finding of that. No, there wasn't. He admitted that he had, quote, lied. Because I believe he testified at the prelim that he didn't have any involvement after the fact, and then at the trial it comes out that he had much more involvement after the fact here. That's a different type of impeachment, in my mind, anyway. I agree, but I think that then dovetails into my next point, which is there's nowhere in the record where opposing counsel can point that the cross-examination in this case was limited. And that is, I think we need to go back to the certified question here, which was whether the trial court violated Cottenham's right to present a defense by limiting his cross-examination of witness Cody Sweet, including whether he procedurally defaulted the claim. The short answer is. He procedurally what? Procedurally defaulted the claim. And the short answer is, no, the trial court did not limit cross-examination, and yes, he did procedurally default the claim. The basis of the claim in the Michigan Court of Appeals was always that he was prevented from confronting his accuser on cross-examination. But there's nowhere in the record where that occurred. He was permitted full cross-examination of Mr. Sweet. I think there were only four objections the entire time he cross-examined Mr. Sweet. One was sustained, but it was an unrelated matter about attorney-client privileges between Mr. Sweet and his attorney. Two of the other objections were overruled, and then one, the defense counsel rephrased the question. Upon rephrasing the question, there was absolutely no objection to the rephrased question. So there's no limitation of cross-examination there. The idea that in this case there's this off-the-record discussion that's then sort of put on the record later, that that might have been about, well, I can't cross-examine the way I wanted to, that's speculation. There's absolutely nothing in the record where defense counsel said, because of your preliminary ruling I'm unable to recall Mr. Sweet and ask him the questions I want to ask him. He dives right into this discussion of, I want to call these other two witnesses, and here's what I want to call them for. And the trial court obviously overruled that, or said that that was not admissible evidence in this case. And here we are with the issue. In terms of the procedural default, I think it's significant to look at the way that Mr. Cottenham originally presented this claim to the Court of Appeals. This idea that the Court of Appeals misconstrued the claim is inaccurate. First of all, when you look at his Court of Appeals briefing, he leads off with a discussion about abuse of discretion for admission of evidence under state law. He then starts a discussion about the right to present a defense, but whenever he's talking about that right to present a defense, he's specifically referencing the idea that he was not permitted to cross-examine his accuser. So then the Court of Appeals doesn't misconstrue the claim. It acknowledges that he raised a constitutional claim here, but it says you've basically tried to fit a square peg into a round hole. You're telling us about a confrontation clause claim, yet your facts to back up this claim have nothing to do with confrontation. Nowhere in the record was he prevented from confronting this witness, nor was he told, don't make that line of inquiry of this witness. The only evidentiary ruling that he can point to that goes against him is to bring in this extrinsic evidence of prior bad acts of the witness. And I don't even think that's a good defense or claim. First of all, the motive that is being discussed in this matter is completely different than what those witnesses were being brought in for. His motive in this case allegedly was that he was upset that his father was spending more time with this victim, and that was his reason apparently for allegedly killing her. The witnesses that defense counsel wanted to bring in, the jealousy, the motive there was a romantic nature. It's completely different, and there's no way to say, well, it's both about jealousy, therefore they have relevance to each other. They don't. These were intimate, romantic relationships where he exhibited violence. The theory at the trial was that he exhibited violence because he was jealous that his father was spending more time with this person. They don't match up. They don't have any relevance to each other. And I think that is, if we ever get to de novo, that's a problem with this evidence in general. But I don't think the court gets that. I think this issue was procedurally defaulted. I think the district court was correct to find a procedural default here because he did abandon the claim. He can't support a claim that he was denied his right to confront his accuser with any facts in the record, therefore the claim is abandoned. What about the motivation, the idea that he has a pending case, and once he laid hands on her, he realized that he had to get rid of her? Well, first of all, there's no testimony that he actually laid hands on her. That's defense's theory of what an alternate theory for the case would be. No, I understand that, but you're allowed to do that. Yeah, and I agree you are, but I don't think that you can bring that in with a prior or a contemporaneous criminal offense and say that you obviously must have decided right then and there that, oh, I don't want to be in trouble for another offense. And I don't think there's record evidence to say this is contemporaneous with the date of the offense, the homicide, unless I'm misremembering the record in that regard. I'm not understanding what you're saying. Well, I'm saying I don't know if there's record evidence to say that Mr. Sweet's conduct that he was on bond for, which I think is what the Court's driving at here, I don't know if there's record evidence to say that that was even occurring at the time of the victim's homicide. And I could be misremembering the record on that, but it was my understanding that that was a pending case at the time of trial, not necessarily a pending case. Oh, you're saying that that happened after. Again, I may be misremembering the record, but my recollection is that was a pending case at the time of the trial, not necessarily at the time that the homicide occurred. Well, then their theory wouldn't make any sense whatsoever if that wasn't the case, so I would have thought you would have already used that to blow up that argument. I don't know, and again, going back to the motive aspect, I still don't think you can bring in the pending case under the rules of evidence to try to show that issue. I think you might be able to ask Mr. Sweet directly if you had other motivations for testifying, such as were you worried about committing this offense? Were you worried about getting a second charge? And defense counsel clearly had the opportunity to ask those questions and didn't. They tried to go this roundabout way and bring this in for a motive. You're saying that I understand that this is incomplete, but did you have conversations with trial counsel? I did not, no. I'm just going off of what the record says, and he says right in the record what his purpose for bringing in that particular witness was. It was to say that he might have had motivation for, I guess, and maybe I'm not following his argument properly, I guess. Okay. The judge was pretty clear that he didn't think this evidence was worth anything, but it does seem to me to be relevant and you have a situation where there are two people in the house. One of them did it, unless you believe that this other guy did it. It doesn't seem like anybody really ran with that at trial. So you don't know who did it. A lot has to do with motive. Sweet's the new guy on the block, and it's very easy to say what reason would he have to do it. So counsel is building a case. One is that he's jealous, but the other thing that I think would be relevant to a jury is, you know, you say, well, why would he kill her? Well, he was none too happy with her being around. He's in the basement with her. I mean, you're manufacturing your theory here, and something happens. Maybe it didn't start with an intent to kill her, but something happens and he realized that, oh, my God, I'm going to have another assault charge, and he decides he has to get rid of her, knowing that his father wouldn't be too upset. Okay, I think the first part of that statement was addressed on cross-examination, whether or not he had this sort of jealousy or was upset that his father was spending more time with the victim. The problem with the motive aspect is linking it up. I think is linking it up, because in order to get to that motive, you have to somehow have some belief that Mr. Sweet was down in the basement when the victim was murdered in this case, but there's no record evidence to support that, and I believe on cross-examination, trial counsel did ask him questions along the lines of, well, were you down there? Were you the one who did this? And the answer was no. So then how is it relevant to then bring in? He's in the house, and he's the only witness. And I understand that, but I also think there's a disconnect there still, because you don't have any belief or any reason to say that he's down there. So then you want to bring in this other witness that's going to say, well, he assaulted me, and he was on bond pending these assault charges, and then somehow you're going to link that up to, ah, Mr. Sweet was down in the basement, even though there's nobody who's testified to that. He won't admit that. Nobody to testify about it. Well, I think that's why it's not relevant, right? Because then you're just throwing. It's all circumstantial, and you either believe Sweet or you don't, and there's a lot of reason not to believe it. But it was curious to me that nobody, apparently he tried to strangle one of these women, and I don't see anything here, but as an officer of the court, was there any mention of using that fact? It's like an M.O. when he gets angry at women, he strangles them? I don't believe that was ever argued by defense counsel, no. Just moving past this procedural default for a moment, I do think that no matter what, he cannot win on the merits. Again, there's no limitation on cross-examination. The issue then, and Judge White, we've been discussing this a little bit, is this issue of motive. What we're basically doing there, though, is engaging in this discussion of state evidentiary rules in a state evidentiary ruling, where the trial court said, I'm not allowing it in for motive. Obviously, there's this sort of umbrella idea of the right to present a defense that's hanging out here, but at the same time, the right to present a defense does bow to state evidentiary rules. In this case, the court made a ruling that this is inadmissible evidence. It may not be something that this court agrees with, but that's the state court's ruling on state court rules of evidence. Under MRE 404B, this was not relevant. It wasn't presented for a proper purpose, although as we've discussed, that's an argument about the motive issue. But you still have to get through, is it relevant to a facted issue at trial? Is it prejudicial? There's a lot more to this analysis than just, is it presented for a proper purpose? And the court engaged in that analysis and ruled the evidence was inadmissible. So I think, at the end of the day, and I see I'm getting close to the end of time, but I'll think I'll end it here, unless the court has any other questions. This claim was procedurally defaulted. Whether or not he was limited in his cross-examination of Cody Sweet was procedurally defaulted because he abandoned the claim at the trial court. Getting to the merits, it's not a claim he can win on because again, there was no limitation on cross-examination. What he's left with then is a state law evidentiary claim which is not cognizable in this court. And therefore, I think the denial of his petition for habeas corpus was correct and I'd ask this court to affirm. Thank you. Thank you, Mr. Jenkins. I want to first start with the merits and then work backwards to procedural default. So the state describes the relation of the right to present a defense against evidentiary restrictions as a bowing, that constitutional interests must bow to the rules of evidence when a trial court says it must be so. But that's not what the Supreme Court's Sixth Amendment precedent dictates. Rather, it's a weighing of the weighty interests of the accused and this is from Chambers v. Mississippi against the state's interest in applying rules of evidence. And when those interests are disproportionate, then it must be that the constitutional interests of the accused weigh out. So here, I think we've discussed at length that Mr. Cottenham's interests in impeaching Mr. Sweet were very, very, very high. Let me ask you about the, because a couple of times we were talking about impeaching and we were talking about a motive. When you talk motive here, are we talking his motive to lie or his motive to commit the crime? I'm speaking primarily about his motive to testify against Mr. Cottenham. Now, to the extent that that involves Mr. Sweet minimizing his own involvement in the offense, that is absolutely a motive for him to testify against Mr. Cottenham and to throw the whole thing on Mr. Cottenham. But no, I'm speaking primarily about his motive to testify against Mr. Cottenham. I'm sorry, his motive to lie. His motive to testify against Mr. Cottenham. Which if he committed the crime would be a lie. Yes. Yeah, I mean, I can't imagine a greater motive than that he's the one who was really guilty. And that certainly was in the case, right? That's correct, Your Honor. Those two motives are related. But I think the encompassing motive is his motive to testify against Mr. Cottenham. Oh, I mean, I totally misunderstood. I thought it was his motive to give the jury more of a motive to commit the offense. But I guess not. I would look at those motives as nesting within each other. Mr. Sweet's motive to testify, to lie, as Judge Boggs put it, against Mr. Cottenham could have been driven by his involvement in the crime and his motive to minimize his own involvement in the offense. So Mr. Cottenham's interests in impeachment were high. The state's interest in imposing this 404B restriction was not as high. And that's because this is the kind of reverse 404B evidence that doesn't pose the same risk of prejudice against the accused. 404B is a rule that's primarily enacted to protect the accused. And as the trial court judge himself said, and this is from that conversation from 360 to 363, Mr. Sweet was not on trial. So the risk of prejudice to Mr. Sweet from any kind of propensity evidence or specific motivation, specific instances of misconduct, rather, and I'll just finish my sentence here, if that's OK. You can give a closing. Go ahead. Sure. So to the extent that the prejudice that the jury might draw against Mr. Sweet would have resulted from this extrinsic evidence or the cross-examination, that's not the kind of prejudice that we're worried about with 404B. It's Mr. Cottenham who's on trial. And it's Mr. Cottenham's weighty interests that this court would have to weigh against the state's interest. So for the foregoing reasons, and because this court should apply de novo review, I didn't speak that much about procedural default, this court should look at the claim de novo. It may remand for an evidentiary hearing, remand it to the district court, or find that the two constitutional violations that he made out occurred, and grant habeas relief. Thank you very much. Thank you, Ms. Basha. Thank you, Mr. Jenkins. Ms. Basha, your arguments were well-presented, and we appreciate the clinics taking on this case for us. And we'll put it under submission and ask the clerk to adjourn the court, please.